**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **B.G.-1, S.G., L.G., and J.S.**

**No. 21-0993** (Mason County 20-JA-37, 20-JA-38, 20-JA-39, and 20-JA-40)

**MEMORANDUM DECISION**

Petitioner Mother B.G.-2, by counsel David B. Richardson, appeals the Circuit Court of Mason County's November 9, 2021, order terminating her parental rights to B.G.-1, S.G., and L.G., and her custodial rights to J.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Tonya Hunt Handley, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. Petitioner argues that the circuit court erred in terminating her parental rights based upon insufficient findings that she failed to successfully complete her improvement period due to a continued lack of parenting skills and failure to maintain proper housing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner burned the children with cigarettes and that the parents medically neglected the children's burn marks and other health conditions. According to the petition, petitioner denied burning the children and would not speak further to the investigating Child Protective Services ("CPS") worker about the allegation. The father stated that he believed the children received the marks by playing. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as B.G.-1 and B.G.-2, respectively, throughout this memorandum decision.

paternal grandmother stated that the oldest children, then-eight-year-old J.S. and then-five-year-old L.G., reported to her that petitioner burned them with cigarettes. The grandmother took L.G. for medical care, and the treating physician found that his marks were infected and prescribed medication for the untreated skin infections. The DHHR also alleged that the parents lacked the parenting knowledge and skills to care for the children and failed to provide them with appropriate housing. Finally, the DHHR alleged that petitioner has a history of CPS referrals for having a dirty, cluttered, and unsanitary home; that there has been an open CPS case with the family since September of 2018; and that despite services in the home, the parents had failed to maintain an appropriate living environment or meet the children's medical needs. Thereafter, the parents waived their rights to a preliminary hearing.

The parents completed their parental fitness and psychological evaluations in late July of 2020. By August of 2020, the court held an adjudicatory hearing during which the parents stipulated to the allegations of abuse and neglect contained in the petition. The court accepted the stipulations and adjudicated the parents as abusing parents. In September of 2020, the multidisciplinary team ("MDT") learned that the children had exhibited concerning behaviors after visits with the parents, and that L.G. was in therapy due to his aggression with his siblings and the foster family's pets. A visitation provider report, issued in October of 2020, stated that petitioner fed age-inappropriate food such as fruit snacks to then-two-year-old B.G.-1, which caused him to choke, and that when petitioner did not act, the provider dug the food out of the child's mouth. Further, the report stated that petitioner had to be prompted to change B.G.-1's and S.G.'s diapers.

In November of 2020, the circuit court granted the parents post-adjudicatory improvement periods. The terms of petitioner's improvement period included the following: submit to random drug screens; complete parenting skills classes; participate in supervised visitations and demonstrate an attachment to the children; follow the recommendations contained in the parental fitness evaluations, including attending weekly therapy sessions to address anger control and mood disturbance, and independently maintain a habitable home environment for at least six months at the same location.

According to a visitation provider report provided in December of 2020, during an in-home visit, petitioner lit a cigarette and L.G. hid behind the couch. The provider made petitioner put the cigarette out. Another provider report from January of 2021 stated that when petitioner changed B.G.-1's diaper, she did not clean him up with any wipes and just put on a new diaper. The provider report from March of 2021 stated that the parents had to be reminded continuously to supply the children with meals and not just snacks during visits. In April of 2021, the visitation provider's report stated that the parents had to be reminded to bring changes of clothes and diapers for the children. The report also stated that petitioner's home was treated for bedbugs. By May of 2021, the visitation provider's report stated that petitioner had obtained several dogs and that there was a flea infestation in the home.

The court held a review hearing in May of 2021, wherein the guardian expressed concerns that petitioner had not followed through with anger management counseling as recommended by her parental fitness evaluation. The court extended the parents' improvement periods finding that they had not met all of the terms and conditions of their improvement periods. On September 1, 2021, the DHHR filed motions to revoke the parents' improvement periods, citing their failure to

maintain appropriate housing, bring proper food and necessities for visits, or demonstrate an adequate attachment to the children.

The court held a hearing on the DHHR's motion to terminate the parents' improvement periods in early September of 2021. A visitation service provider testified that he supervised three visits for the parents in August of 2021. The provider stated that the visits were moved to a public park due to petitioner's home smelling overwhelmingly of dog feces and urine. He stated that generally, petitioner would not interact with the children and either complained that she was too tired or that her legs hurt. He further described a remote video visit where the parents were lying on their bed while the father was shirtless, caressing each other, and acting very tired. They largely kept their eyes shut, and barely spoke or interacted with the children. The provider also explained that the parents were required to supply spare clothes or diapers but always relied on the backup things sent by the foster family.

The supervising visitation provider testified that the goal in these cases is to eventually increase visitations to work toward reunification. However, she stated that increased visits never occurred due to numerous issues with the parents. She explained that after the first visit at petitioner's home in approximately July of 2020, the children allegedly contracted bed bugs, so all visits were changed to outside of the home. The provider stated that the next attempted at-home visit took place in August of 2021, but the visit was moved to a public park after her employee called and complained of the overwhelming smell of dog feces and urine in petitioner's home.

The CPS worker testified that when she visited petitioner's home in March of 2021, there were no issues of concern, including no animals. However, as months passed petitioner obtained numerous dogs which created issues with fleas and dog feces and urine. The worker stated that the DHHR had "exhausted all services with this family. They've had services for several years. There's been no change." She explained that the MDT held a meeting in June of 2021, during which the members discussed the children's special needs and interventions with Birth to Three, a program to help with children's behavioral, developmental, and health needs. A Birth to Three worker attempted to set up a meeting with the parents, but they failed to confirm or attend the meeting. The CPS worker stated that the parents never graduated to more than two three-hour visits a week.

Petitioner testified that she obtained her own home in December of 2020, and that her mother moved in around March of 2021. She stated that she had two dogs with one not yet house trained. She testified that she had fulltime employment, completed anger management sessions, and had attended therapy regularly until her health care provider quit in July of 2021. She asserted that she was unable to find another therapist until a few weeks prior to the hearing. Petitioner claimed that she was often tired at visits due to her work schedule. She stated that she had about eight different parenting and visitation providers during her improvement period. Petitioner testified that during an attempted home visit with one provider, her less than one-year-old dog had urinated on the floor before she could take it outside and that the provider insisted that visits take place at the park because he was allergic to dogs. She denied the inappropriate behaviors during an online visit as testified to by the visitation provider. Petitioner stated that she never saw flea bites on the children but gave the dogs flea baths and vacuumed the house. She testified that she always brought her own diapers, wipes, food, and drinks to visits. At the close of evidence, the

court held the DHHR's motion to terminate the parents' improvement periods in abeyance and set the matter for disposition.

The circuit court held a final dispositional hearing in October of 2021. At the beginning of the hearing, the court found that the parents had not successfully completed their improvement periods based upon the evidence adduced at the prior hearing. The DHHR presented evidence that the CPS worker visited the parents' homes in September of 2021. Although it was 11:00 a.m. when the worker arrived at petitioner's home, petitioner was still asleep and did not answer her phone. Petitioner's mother woke petitioner, and the worker was let inside the home. The worker stated that as soon as she entered petitioner's home, she smelled the odor of dogs and observed dog feces and urine puddles in the home. She stated that one dog had stepped in feces and jumped on her, getting feces on her clothes. She explained that the living room had some furniture, but there was a cushion-less futon sitting on unstable cinderblocks, which was a safety concern for the small children. She observed clothes and other clutter on tables and counters. The worker stated that the children's bedroom had bunk beds but was empty of any other furniture, items, or linens, and had cigarette butts on the floor. When asked about other issues that petitioner failed to address, the worker explained that petitioner did not provide proof of her completing anger management classes and had not demonstrated an adequate attachment to or bond with the children as indicated by the numerous visitation provider reports.

By order entered on November 9, 2021, the circuit court found that despite the parents participating in parenting skills classes, they had not shown an ability to properly parent the children as evidenced by the visitation providers' reports and testimony. The circuit court noted that the children were special needs, and the parents had not followed through with an appointment with a Birth to Three service provider. Further, the court found that petitioner failed to address her inability to keep a clean, safe, and appropriate home for the children. The court noted that the DHHR was obligated to seek termination of parental rights when a child has been in foster care for fifteen of the most recent twenty-two months, and that the children had been placed in foster care since June of 2020. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. The court terminated petitioner's parental rights to B.G-1., S.G., and L.G. and terminated her custodial rights only to J.S. Petitioner appeals the circuit court's November 9, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[2]The father of B.G.-1, S.G., and L.G. had his parental rights terminated. The permanency plan for those children is adoption by their foster family. The father of J.S. was deemed nonabusing, and that child remains with the father.

4

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights based upon insufficient findings that she failed to successfully complete her improvement period. Petitioner argues that the court erred in finding that she lacked parenting skills and failed to maintain proper housing. According to petitioner, she maintained steady employment and maintained a suitable home, despite the DHHR's reports to the contrary. Petitioner states that the "unannounced visit to the home was not conducted with any anticipation of a visit with the children in the home." Petitioner notes that her drug screening requirement was discharged by the court, and she fully participated in anger management treatment. Petitioner further asserts that she attended all visits, that none were cancelled due to noncompliance, and that she attempted to comply with the instructions from the various parenting and visitation providers. Petitioner argues that in the DHHR's motion to terminate her parental and custodial rights, it relied heavily on testimony at the September of 2021 hearing, and she points to testimony that the DHHR had not been to her home since early August of 2021 to inspect the home. She also points to testimony that the alleged bed bug infestation had been addressed in April of 2021 and that her home had working utilities and food in the kitchen. As such, petitioner asserts that there was no clear and convincing evidence that she failed to complete the terms and conditions of her improvement period.

We have previously directed that

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.,* 185 W. Va. 613, 616, 408 S.E.2d 365, 368 (1991).

Here, the circuit court did not err in finding that petitioner had not made sufficient improvement to justify the return of the children to her home. "When any improvement period is granted to a [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4). The record establishes that petitioner failed to address parenting deficiencies and an inability to keep clean and hygienic housing. According to the record, petitioner attended visits but largely failed to interact with the children and made excuses that she was tired or that her legs hurt. Additionally, throughout the case, providers had to prompt petitioner to do simple tasks such as properly change diapers, bring

appropriate foods and other items, and adequately supervise the children. Contrary to petitioner's characterization that she always brought the required items to visits, several witnesses and numerous provider reports stated otherwise. The court weighed the credibility of this evidence, which we decline to disturb on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). While petitioner participated in parenting classes and attended visits, she made no legitimate progress in her overall ability to parent as she often relied on others to take on parenting tasks. Additionally, petitioner showed no interest in the children's special needs as she failed to follow through with her appointment with the Birth to Three provider.

Further, the evidence supports the finding that petitioner failed to maintain adequate housing. The DHHR commended petitioner on obtaining independent housing. However, the evidence shows that she failed to keep the home clean and hygienic. Several witnesses testified as to the perpetual problem of dog feces and urine in the home. Petitioner testified that she had two dogs, when a provider report stated that she actually had three. The home also had issues with a flea infestation. Although petitioner is correct that the home had working utilities and adequate food, the home was clearly not clean and hygienic with noted clutter. It was also noted that the home had unsafe stacked cinder blocks in the living room and lacked many items such as linens in the children's room. In an effort to excuse the state of the home, petitioner argues that the "unannounced visit to the home was not conducted with any anticipation of a visit with the children in the home." However, petitioner had been required to maintain a clean, hygienic, and appropriate home during the entire improvement period and was on notice that CPS workers could visit the home at any time, especially immediately prior to the final dispositional hearing. Here, the court found that petitioner failed to successfully complete the terms of her improvement period, and the record supports this finding.

The above evidence likewise supports the termination of petitioner's parental and custodial rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental and custodial rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Although petitioner participated in some services, the overwhelming evidence demonstrates that she failed to adequately progress in those services or, ultimately, remedy the conditions of abuse and neglect. Petitioner showed no long-lasting progress in her ability to parent or keep a safe, clean, and hygienic home. Moreover, petitioner fails to acknowledge the statutory limits for improvement periods. *See* W. Va. Code § 49-4-610 ("Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and

convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph."). By the dispositional hearing, the children had been in the foster family's care for sixteen months, and the court found no compelling circumstances to extend petitioner's improvement period yet again.

Finally, insomuch as petitioner argues that the circuit court should have imposed a less restrictive alternative to the termination of her parental and custodial rights, this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Such findings are sufficient to support the termination of her parental and custodial rights, and we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 9, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn